Our final case on calendar for argument today is McBride v. Lawson. McBride v. Lawson Good morning, Counsel. Good morning, Your Honors, and may it please the Court, I'll aim to reserve five minutes for rebuttal. All right. This case asks whether the state may criminalize conversations between patients with rare diseases located in California and expert physicians located outside of California solely because those physicians are licensed in states other than California. If those same conversations took place in New York, for example, after a patient traveled there for in-person advice and treatment, then the answer to that question would obviously be no. California could not prohibit them. Here, however, California's medical board prohibits the same conversation even though the expert physician never enters the state but uses telehealth to consult and follow up with patients from out of state. Can I ask a question? What's the difference between communication that's subject to the First Amendment and practicing medicine? I mean, part of the problem with this case for the other side, I guess, is it's not clear to me how you practice medicine over telehealth. I mean, I guess if you prescribed certain medication, would that be prohibited? I mean, if you're just talking, if you're just giving general advice, isn't that kind of the strength of your claim here is that this is not really practicing medicine, but it's more just not practicing medicine in the way we understand it. You're not doing a checkup. You're not checking their blood pressure. You're not – so what actually is happening, I guess, is my question. It's a great question. Of course, as the court is aware, two weeks ago the Supreme Court decided that Chiles v. Salazar case, I think that case should probably be the primary case we discussed today and its implications here. That wasn't really the same scenario there. There was no question of whether or not the person was licensed to give the advice or to provide the service. So that, to me, that doesn't help me to resolve this issue because this issue to me is whether or not in the course of the telehealth consultation there is medical advice being dispensed. And if medical advice is being dispensed, to me, that's the practice of medicine. That's the purpose of consulting this person. Otherwise, you could do CHAT-GPT. But the reason that you are consulting with this person is because of that person's medical expertise, and the patient is hoping to get some direction, some clarification, some assistance with a particular medical condition. And to me, that's the epitome of practicing medicine. I agree, Your Honor. We do not contest that this case and the specific and only use of telehealth is the practice of medicine or not. That's because the California statute that applies to the practice of medicine is incredibly broad. It includes telehealth. So we're not challenging that telehealth conversations are the practice of medicine or not. We can see that they are. What we think is the important distinction and where Childs is particularly helpful to our position is that when the spoken word is the treatment, the First Amendment still applies. And that's because it's not just a labeling game of is this treatment or is it not. And I know we made a lot of this in our briefs, but that was before the Childs case was decided. But even though the spoken word is the treatment, that would still fall under the First Amendment's protections. But, of course, we allege that what's happening in our specific as-applied case is not treatment at all. It's just pretreatment consultations and follow-ups after the fact. But even if it were treatment speech after the Supreme Court's decision in Childs, the First Amendment would still apply. So is there non-speech at issue here? For example, if I'm in California and I call a doctor in New York, can that doctor in New York prescribe medication to me? Let's take the prescription question ahead. I have two responses to that. The first and the simplest is the act of prescribing would fall on the conduct side of the line, not speech, even though it might be written on a pad or communicated via words through the computer. That is conduct because what it does is it provides a patient with a legal right to access a drug they otherwise could not access. Judge O'Scanlan described this very well in a dissent from Rehearing and Bank in the Pickup v. Brown case. But interestingly, even if it was speech, California state law does not prohibit out-of-state physicians, regardless of where they're licensed, from prescribing to California residents. So even if that was speech – Wait. I thought the whole point was you had to be licensed in California. I thought California required you to be licensed to practice medicine in California. To practice medicine broadly but not to prescribe. It's a no-no. So you're saying if she contacted this physician in New York and asked for a prescription to be written, the doctor would write a prescription that would be recognized in a California pharmacy? Correct, Your Honor. That's California Business and Professions Code section 4005. We'll ask the state about that. And I think that's an important point because I think there's an underlying concern that the state articulates that, well, how could the medical board pick and choose how a telehealth conversation may go? Maybe it's just a consultation or let's even – it's a follow-up after a patient has gone to see Dr. McBride for intensive radiation treatment. They have a phone call. There's a concern with how that's gone. And let's assume that's the speech part. Of course, that's our argument. But what if in the course of that conversation he were to prescribe? Our position is that would be conduct. The state could theoretically prohibit that. But the state of California has chosen to allow Dr. McBride and any other licensed out-of-state physician to make that prescription. So if the telehealth conversation is speech rather than conduct, what level of scrutiny should apply? In this case, we posit that it's content-based, and so strict scrutiny would be required. But it's neutral, right? I disagree. I think what Your Honor is getting at is the law doesn't seal out Dr. McBride or anyone can say this specific thing or that specific thing. It's not that specific. It's involving the entire subject matter, the entire topic. Which makes it content-based. I agree with you. It's content-based. But Justice Kagan's concurrence in Childs pointed out that it would be a different case. So the speech at issue in Childs was talk therapy, and the court concluded the question that has come up in our cases in Brown and Tingley, that that is indeed speech. And sort of answering the question, is it conduct, is it speech? It's speech. And there it was, in Childs, it was content-based and it was viewpoint-based. It wasn't neutral. So one particular view in speech was permitted and the other was not. Justice Kagan pointed out there would be a different case and more difficult if it were content-based but it were not neutral. And here, there doesn't seem to be any prohibition on the particular viewpoint that might be expressed in the speech. So it seems to be neutral even though it regulates the content of the speech, which is related to medical treatment. So I guess it's circling back to how do you address that? And I assume you're going to argue we should apply strict scrutiny or that it would survive under any other standard of strict scrutiny as well. But it seems that there's some murkiness in the case law as to what standard now applies after Childs. I follow your question now, Your Honor. I think, yes, this case does not present the viewpoint discriminatory situation that was prevalent, that was present in Childs. I would point out that Justice Kagan's concurrence was only joined by one other justice. So that wasn't persuasive to the majority of the court. And animating that discussion was this idea that even if a law is content-based, maybe strict scrutiny is not appropriate if it's not viewpoint discriminatory. But the Supreme Court, the majority in Childs, it first analyzed the content nature of the law and said that alone subjected the law to strict scrutiny. And then said it's also viewpoint discriminatory, which was just worse and had a further reason to apply strict scrutiny. We have the viewpoint portion here. So you're relying on the fact you're saying that the court is saying any time it's content-based, it's going to be strict scrutiny regardless of whether it's viewpoint discrimination or not. Absolutely. And that's nothing new. The Supreme Court has said that for decades. There are many cases establishing that point. And so our point is because this law in the context as applied, which is only to telehealth consultations and follow-ups, is restricting the ability of a physician to discuss the topics of medical topics. And so content-based. I just find it difficult to say it's strictly speech. That's my difficulty I'm having because to me, there has to be an element of conduct in there. Otherwise, it's of no assistance to the patient. If the doctor if the patient isn't getting the benefit of the doctor's expertise, which is what this doctor is saying, that he has expertise that no doctor in California has, then how is this simply speech without any conduct if he's not imparting any medical advice? Because I think the point that the child's majority makes repeatedly throughout the decision is what the court is to look at is what exactly is the plaintiff challenging in this case? It may be true that the law facially is primarily concerned with the conduct, think surgery, scalpel, hands-on medical conduct. But what's relevant in the court's analysis is what are the plaintiffs challenging? In child's, it was clear that they were challenging talk. It was talk therapy. There was no diagnosis. There was no course of treatment that was being recommended. It was simply talk therapy, talking, talking, talking, speech, speech, speech. So I'm not sure that that equates to what the telehealth provider in this case wants to do. Well, in this complaint, as alleged, all Dr. McBride and Ms. Horwitz's specialists do is talk. They only consult. They only follow up after the fact. All the actual treatment, the conduct occurs out of state where those physicians are licensed. Dr. McBride is a radiation oncologist. This is intensive, hands-on radiation. What would he typically tell a patient? Well, in the context of their conversations, what would that look like? I want to be helpful. I honestly am not entirely sure that's not included in the allegations of the complaint. But what is included in the allegations of the complaint is that he does not use telehealth to treat patients. That's explicitly stated, I believe. The practice of medicine is not exclusively treating patients. It can also be consulting with patients. There's a thriving area of medicine where doctors consult with patients and direct them toward a course of treatment. That's also the practice of medicine. So that's why I have a little bit of difficulty saying this is purely speech and not layered with some conduct. And I appreciate Your Honor's position. But I think the point and the lesson after Child's is when what is challenged in a particular case is that the state is regulating the speech component, then the First Amendment applies. Even if the speech is medical advice. So I share Judge Rawlinson's concern trying to figure out what's happening in these conversations. It's speech, clearly. It's over telephone. But if they're speaking to Dr. McBride after they've had radiation treatment and he's prescribed some medications for them, anti-nausea medication or something along those lines, and they share their symptoms and what they're experiencing. And he gives them advice and says take half a tablet or take a tablet and a half or something along those lines. Isn't that dispensing treatment? Well, even if it is, after Child's where the talk therapy was the treatment, the Supreme Court said that still means the First Amendment applies.  The talk therapy would not be the treatment. The treatment in and of itself in Child's was talking. I think I follow the question now. The distinction it seems Your Honors are making is the talk therapy, it's only the spoken word. A patient doesn't then perhaps go and do some conduct-related act. Sure, I think there are some distinctions there. But I think the main takeaway, the important takeaway from the Child's case is what's being regulated is the physician's ability in this case just to speak. The state certainly can have an interest in regulating the conduct aspects. But the way we have alleged this case is all that's restricted are conversations about consulting and following up. But there's no context to those allegations. In Child's, the record was clear about what exactly was included in the consultations. But just the allegation that the doctor is speaking without any indication of what that speech entails makes it difficult for me to say that it's pure speech. I think the context that the complaint provides is considered that a patient discovers a rare disease or condition that their local physician doesn't have the expertise or resources to handle. Dr. McBride or a similar specialist is known to be able to potentially treat that. So a conversation is had just, yes, this is what I can do, what I can't do. It appears your situation fits within that. So now come see me for treatment. It's the whole point of the consultative piece is to allow patients to not have to travel across the country just to consult with many physicians who may or may not be able to treat them. And so that's the primary context here. And that's outlined in the complaint. Do you see this as being limited to specialists? So there was a big focus on the fact that this doctor is a specialist and there are no physicians reportedly in California that can provide the same speech as this doctor can. So do you see that being limited to specialists? How could you cabin that to just this scenario? If we say that telehealth consultations is protected by the First Amendment, then it's not really limited to the scenario that you have in your complaint. We, of course, only allege this case as applied to the specialty context. That's why the patients need that consultation in the first place. But I agree that a broader precedent that just a telehealth conversation where it's only the spoken word, that could more broadly have First Amendment protection. And perhaps that's the case. I don't think that that should trouble the court, however, because no matter what the specific context would be, the state would have the opportunity to justify that. And may I remind the court that we're here on a motion to dismiss. The state has not yet been held to its burden to justify this application of the law, much less any other. But in this case, if we were to prevail and be remanded to the district court, they would have the opportunity to do that as well as in any other future application. So if Dr. McBride's office employed an assistant who spoke to prospective patients, gathered information through a telephone call, then reported back to Dr. McBride. This is what this prospective patient says. And Dr. McBride says, yes, I think we could help them. And the assistant calls back and says, yes, come to New York. I mean, would that be OK under this statute? It seems to accomplish what you're suggesting is happening in these telehealth consultations. It just takes the doctor out of it. I honestly don't know how the state would approach that scenario, Your Honor. It has not come up yet in the context of this case. I think depending on certain physicians' practices, their employers, maybe there could be an opportunity for that. Other times, maybe it's direct. But honestly, I just don't know yet. I think that's certainly something that could be found out and explored in discovery in the case. Is it your position that the statute is just too broad? So would you agree that there could be limitations on what could occur in telehealth, that the way this is applied is just too broad? That's not an argument we make. We're willing to accept that. What concerns us with this case is that what is restricted is a physician's ability just to speak via telehealth in this consultative and follow-up component. Some states have accepted telehealth from a full-fledged licensing scheme. We, of course, point out that that would be a less restrictive alternative the state could make. And that's why we think they will ultimately fail scrutiny. But perhaps the state could carve it up even more. But I think there would still be the potential for them to be restricting speech in a content-based manner. I'm sorry. No, go ahead. Do you agree that the states have a pretty serious and legitimate interest in protecting the health of their residents? And the medical field is widely regulated. And the Court has talked about aspects of this historical regulation of the practice of medicine, including compelled speech in the form of informed consent. So how do we apply that analysis to what is happening in a telehealth consultation? The informed consent piece is discussed in a number of cases, particularly NIFLA. And the reason that is conduct and not speech is because the speech there is at most a non-controversial disclosure and informing the patient of what's happening. But what's most important is in the absence of that, then under core components of American tort law, the physician would be committing an assault or battery on the patient without their consent. So that's clearly on the conduct side. Why the broader rationale and one that the district court here alternatively dismissed the First Amendment claim was based on this broad tradition of regulating the practice of medicine. That is not sufficient here as a large, all-encompassing category to not apply strict scrutiny. The child's opinion, of course, pointed out that a general statute like that could be an example of a statute that primarily restricts conduct with incidental effects on speech. But again, the child's court repeatedly pointed out throughout the majority opinion that even though a statute could mostly regulate conduct, as facially the statute we have challenged admittedly does, what is important for the court's analysis is what is implicated in the specific case. And here, that is the speech component, and the state has at no point shown a long historic tradition of restricting speech in that specific context, much less telehealth. There was an example in the child's case about conversion therapy statutes specifically, and it seemed that those didn't pop up until about the mid-70s. And we know telehealth is even more recent than that, and only since the COVID-19 pandemic has it truly become prevalent. And so I don't think the state has any support in just its broad, overarching history in regulating medicine that would justify not applying strict scrutiny in this case. And I see my time has expired. Yes, but I just – if we apply strict scrutiny, why would your client prevail? Well, at least at this stage, the burden is on the state to justify the law, and they just have not yet done so. They've articulated just the broad interest in health and safety. We, of course, counter that, that the entire reason this case is a case is because the patients are unable to receive the care they need in state, and they need expertise from out of state. So to say that, oh, we're just protecting you, well, that's just contradicted by the facts of this case. But as to tailoring, maybe they can prevail. We just don't know because they have not yet been held to that. All right. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Kevin Quaid for the President of the Medical Board of California. I think I should just jump right in with the content-based versus content-neutral distinction that you addressed with my colleague. California's law here is fundamentally different from what was at issue in Childs, where the Court found not only that it was a speech regulation, but a content-based and viewpoint-based speech regulation. That's why the conversion therapy law failed First Amendment scrutiny in Childs. California's licensing law is something fundamentally different. It does not speak to the content of any interactions of physicians in the course of their medical practice. This is a traditional conduct-based regulation that regulates all aspects of practice, even those that concern speech that is used in the facilitation of that medical practice. So what makes it fundamentally different here? Can you address the question about the writing of the prescription? Do you agree with the representation that they can write any prescription and that's not covered by the law? Yes, Your Honor. In all candor, I'm not, unfortunately, familiar with that statute. I recognize that could be an important point. I'm happy to provide the Court with supplemental briefing on that point if the Court wishes. Unfortunately, I'm not able to make an important comment. The reason I'm asking it is because I'm trying to figure out, I mean, if there are exceptions where conduct is allowed, certain conduct, I mean, it sort of undermines your argument a little bit. Yeah, and I understand that. I think there could be different state interests at play with a specific exception for prescription. But again, I'm— Fair enough. Yeah. So is your position that during a telehealth consultation, what is said between the physician and the patient is conduct, that should be viewed as conduct as opposed to speech? I think for First Amendment purposes, that's exactly right, and it goes to the point Judge Rawlinson was making. I think when we look at the practice of medicine, there is, of course, a physical element to that, the scalpel as— But not always. So like in Child's, the therapy, the treatment at issue was speech. So presumably the therapist and the patient were physically together or present in the same room and they were speaking to each other, and that was viewed as speech. So here you have a physician in New York and a patient in California or in Oregon and a patient in California. They're not touching each other. There's no contact. This is speech. At least it's speech in the sense of they're talking to each other. Is it speech as it's understood under the First Amendment? I think the difference is that in Child's— I think the court's analysis should start with what the law that's being challenged is actually doing. In Child's, the conversion therapy law, essentially the court found targeted speech. It, as applied in that case, was an entire speech regulation. It dictated the message and viewpoint of the particular therapist there. California's law is a generally applicable licensing statute. It doesn't speak to speech at all, and to the extent it has any burdens on speech, they are kind of the prototypical incidental-to-conduct regulation burdens that this court has recognized and that we don't think Child's really undermines that doctrine. Justice Gorsuch, in his majority opinion, preserved the incident-to-conduct doctrine line of cases while rejecting Colorado's application of it. He specifically said that a critical question for the speech incident-to-conduct regulations is, does any expressive conduct, is it regulated for purposes unrelated to its content? And that's exactly what we have in the context of a licensing statute, a licensing statute that doesn't dictate what doctors say when they're having interactions with patients. That's what makes this case unlike this court's decision in Connett, where the court found a First Amendment violation based on a prohibition on a specific form of advice, the medical marijuana, advice to take medical marijuana. Well, do you think that this category of professional speech is carved out by Brown and Connard and Tingley, that that survived Child's? Well, so I don't think it's a category of professional speech. I think even after Child's, this court's case law from the NAAP case and the aspects of Tingley and Pickup, we think remain. The court made clear there still is a speech incident-to-conduct doctrine, and we think licensing laws are the prototypical example of the type of regulation that fits into that. So we do think that that survives. It's not a category of speech, but it is a type of speech that is part and parcel with the conduct of a medical practice that this court's precedents and the Supreme Court has said can be restricted incident-to-regulation of that medical practice. So I want to address specifically, I heard during my friend's time some potential hesitance on my top-line argument that this is a conduct-based regulation with an incidental burden. And, of course, under this court's precedent, if we're in there, that is a rational basis, scrutiny, and we win under rational basis. However, I think we win even if this court finds that this is a conduct-based regulation. Content-based? Yeah, content-based. Thank you, Your Honor. Because if that is the case, if the court thinks that it's content-based because it's speaking to a category of medical speech, it is, as Judge Beatty noted, it is still a content-neutral speech regulation. It's the type of regulation that doesn't dictate the particular message, and so we are in not strict scrutiny, but intermediate. So it's content-based because it restricts medical discussion. It's viewpoint-neutral, but what you're suggesting is that the state can nonetheless regulate the content of speech, whether even if they say whatever your viewpoint is within that speech, you still have no First Amendment protection, or if you do, it's very minimal, and all we have to show is some rational basis for why we can restrict your speech. Well, and I might have misspoke. I think if we get to a point where this court is finding that it is content-based, it is true. It is not viewpoint-based discrimination, and under the court's precedent and even the recent Child's Decision, again, another facet of that Child's Decision is the court, while rejecting Colorado's application, it preserved a doctrine of where there is a long history and tradition of certain types of content-based regulation. That might be subjected to a lesser form of scrutiny than strict scrutiny. But it said that Colorado came nowhere close to meeting that what they call daunting standard. Yeah. So how does California meet it here? Yeah, California meets it because this is just a fundamentally different case. The problem in Child's was a level of generality problem. Justice Gorsuch said that Colorado, pointing to the long history of physician licensure laws and malpractice, wasn't specific enough to support the specific conversion therapy law at issue there. There was a level of generality problem. Here, the history and tradition, and it is centuries of history and tradition of medical licensing in this country and abroad, the history and tradition is a one-for-one match of the law challenged here. For centuries in this country, we have had states regulating the practice of medicine through physician licensing, and necessarily that entails content-based restrictions on the speech that occurs under that licensing, that is burdened by that licensing rule. So, Counselor, your position is that the difference, this is what I'm understanding you're saying, the difference here is that the regulation being challenged in Child's was a particular regulation that targeted a particular form of speech, whereas here we have a generally applicable regulation that doesn't target any form of speech. That's exactly right, and that's my top-line position. That's why I think this is a conduct-based regulation, and you don't even get to the Child's universe of cases. What I am saying that is, if you don't buy that, and you think this is content-based... Well, it has to be content-based. I mean, Dr. McBride could call somebody in California and chat with them, and that's not what this is about. This is content. This is talking about health medicine, so it's content. I think you're making viewpoint and content the same, and they're not. You're conflating that. Yes, Your Honor, and I think this Court's case law in NAAP, it is more about the particular message, and I recognize that there are similarities between content-based and viewpoint-based. I'll take the Court's point. If the Court views this as a content-based regulation, we still think we win under the alternative rationale that was rejected in the Colorado case in Child's because here the history and tradition shows centuries of states regulating the practice of medicine and necessarily the speech that facilitates that practice of medicine through generally applicable licensure laws. Was that developed in the District Court? Because this was on a motion to dismiss, so is that something that can be determined from this record? This was on a motion to dismiss. We think that's not dispositive and not a basis for... Well, they just had to state a claim, right? I mean, they didn't have to prevail. It's just whether they stated a claim. That's exactly right, and given there is prevalent case law going back. We cite in the brief the Dent case, the Hawker case. There are 100-year-old Supreme Court cases. In 1910, the Supreme Court recognized in the Watson case that the concept of state regulation of medical practice through licensure was so well-established even at that time that it didn't require any discussion by the Court, and necessarily, if there is this broad and deep history and tradition of this type of licensure, which necessarily comes with the same types of burdens on physician speech, then necessarily that history and tradition supports an analysis of this type of claim under a lesser form of scrutiny, under the alternative rationale in child. Potentially problematic for your argument is the notion that California is exempted prescribing controlled substances. And as I said to Judge Nelson, I would hesitate to just give an answer without the full picture on that. I'm not super familiar with that statute. I think there could be a different analysis of the state's interest, and particularly how that statute plays out. I'd have to look at it, and again, I'm happy if the Court would find it helpful. I'm happy to provide supplemental briefing on that particular point. So we've been talking about the First Amendment this whole time, and your argument is that because states have a history of licensing medical providers, this statute falls within that history and tradition, and it's okay. It's just regulating speech incidental to licensure. But it seems like it could just be overbroad. The issue with her prescription medications would highlight that, but the notion that you need to license physicians seems to say that that encompasses whether a physician can even have a consultation with somebody over the telephone. It seems like another step away from just licensure. So then that raises the issue of the Dormant Commerce Clause and privileges and immunities, which I know we haven't talked about at all, and you don't have a lot of time left. But how do we view this as not just protectionism? Well, let me try and get to that, but first let me just quickly say that under intermediate scrutiny, which we think is at most what this Court should be applying here, there is not the narrow tailoring requirement of strict scrutiny. What the Supreme Court said in Free Speech Coalition was that a law is sufficiently tailored under intermediate scrutiny if its interest cannot be achieved as effectively absent the regulation. So it's a very permissive tailoring under intermediate scrutiny. And so even in the example, even if the law is what my friend says as to prescription drugs, that wouldn't necessarily undermine the tailoredness of preventing these types of consultations through a licensure requirement because there are significant harms that can happen in even a consultation. Even Dr. McBride is a radiation oncologist. I think the Court was identifying during my friend's time that if even in a consultation a doctor performs negligently, this can have serious, even life-threatening effects, and it fits within the heart of the state's compelling interest in protecting its citizens by subjecting physicians to licensure that allows for a continuous supervision. Couldn't California control that to some degree? I mean, they could file a complaint in Oregon or wherever. I mean, I guess they don't control it per se. The California board doesn't control it. But if negligence were being performed on its citizens, they would still have actions they could take. Well, there might be actions, but I don't think the First Amendment requires that the state farm out. It's what this Court has deemed a compelling interest to the particular actions of another state's medical board. And I guess to the broader point, that even if that's the case, under the tailoring standard for intermediate scrutiny, it doesn't have to be. This licensing law doesn't have to be the perfect fit. It doesn't have to be narrowly tailored. So even if there are other options, that doesn't eviscerate the tailoring necessary. Charles said clearly that we don't have to accept the label that the state applies. So even if the state calls something treatment or consultation, that's not dispositive. If it's speech, it's speech. So Dr. McBride's complaint alleges that he is not practicing medicine. And it seems that what you're saying is that for purposes of a motion to dismiss, we don't have to accept that label. We have to say, no, he is in some fashion practicing medicine just by talking to a patient to see if they should come to New York. I think the state, under its well-recognized police power, gets to make that definition. It's not the particular doctor who gets to say, well, I'm not. The state gets to within the limits of the Constitution. So if it's speech and he alleges, which we're accepting is true for purposes of the motion to dismiss it, he's not practicing medicine or dispensing medical advice. He's just speaking with them in a consultation. How can the state regulate that? Well, I don't doubt that it is actual speech. And Charles says that even communicative speech in the form of a doctor-patient relationship is speech. But that doesn't remove this case based on the specifics of this law that's being challenged from the speech incident to conduct doctrine of cases that the court in Charles preserved and that this court has applied, particularly when it comes to things like psychotherapy and the like in the NAAP case. What were the examples that the court cited in Charles for speech incident to conduct? There's informed consent. What else is there? So Justice Gorsuch used the hypothetical of a law that prevented public fires that incidentally. Burning a flag. Incidentally burning flags. Those examples were pretty far afield. They weren't in the medical context. Yeah, they weren't in the medical context. But they do, I think, provide kind of an important window into operationally California's licensing law essentially functions the same way. It puts a flat criminal ban on the practice of medicine absent a license. Incident to that, there is speech that occurs in the context of a practice of medicine that can't be done without a license. And so we think it fits pretty closely to that example. And that would put us into intermediate scrutiny. And we also think, as I've noted, that the law fits within this really centuries old tradition of states licensing the practice of medicine and therefore necessarily placing incidental restrictions on speech in the course of that practice of medicine. Can I ask a quick question going back to the Dormant Commerce Clause? Do you think that the appropriate test comes from Hunt or Pike? And does it matter for purposes of our analysis for the Dormant Commerce Clause claim? Well, those two tests are two different strains, basically. Two different theories of a Dormant Commerce Clause violation. Does this fit within one or the other? Or do you think it fits within both? We just have to analyze both. Well, the court has recognized, so at least the way I think about it, I think of Hunt as the frontline discrimination type of case. But there is a lot of interplay because what the Supreme Court has said about the Pike analysis is that the burden on interstate commerce essentially comes from discrimination. And I believe this court has recognized that there really hasn't been a case that has found that type of threshold burden on interstate commerce under Pike absent discrimination. But so we've analyzed them as basically two different strains. And so on the discrimination side is Hunt. And why we think Hunt is different is in Hunt, the law at issue was the reason for the disparate effects, the change in position of the apple growers. And here, by contrast, as the district court we think correctly found, to the extent there is any difference in the position of out-of-state physicians versus in-state physicians, that difference owes entirely to the out-of-state physician availing themselves to multiple markets of patients and thus having higher aggregate licensure costs. So the difference is, in this case, it's not California's law that's calling the disparity. And I see I'm out of time. I'll just briefly say on Pike, the higher disparity of physicians is something this court has said are the type of compliance costs that don't create an actionable burden on interstate commerce. And with respect to the alleged harms of California patients, this court has said that that is the prototypical type of policy consideration that is not a harm in interstate commerce, but properly goes to the wisdom of the law and is addressed to the legislative process. So under either strain, we don't think there's a viable dormant commerce clause claim. All right. Thank you, counsel. Thank you so much. Is there any rebuttal time? All right. We'll give you a minute for rebuttal, counsel. Thank you, Your Honor. I'll make it brief. Just quickly, I know there was, again, some back and forth on the prescribing for the court's benefit. Those citations are California Business and Professions Code, section 4005, subpart B. And there's a companion piece in the California Code of Regulation, title 16, section 1717, subpart D, as in dog. Counsel, did you make that argument in the district court? We did not. Okay. Just ask it. I honestly discovered it recently in going through the statutes. There is no case that says content-based restrictions on speech are only those that single out specific things at a very granular level or restriction. The Supreme Court in Reed and Sorrell, this court in Conant, said that also included as a content-based restriction are ones at the topic, subject matter, the broader level. And that's what we have here. Even if the court disagrees that strict scrutiny is appropriate and instead applies intermediate scrutiny, the state has not yet been held to that very meaningful… But, counsel, in Childs, it was talk therapy. In Conant, it was marijuana use. What is the corollary here? So in Conant, it was a prohibition on discussions about recommending medical marijuana.  So we have a subject area in both of those cases. In Childs, it was talk therapy, conversion therapy, more precisely. And in Conant, it was marijuana. So what's the parallel for this case? What's the topic that's being… The speech, particularly, in what arena is it being impeded? That's the difficulty I'm having with your argument. Those are two very finite areas that were being considered by the court. And we have a much more general proposition in this case. So what would be the analogous topic in this case that it's being impeded? It would be the Supreme Court's decision in Sorrell. Now, tell me the topic in this case. In this particular case, comparable to conversion therapy and marijuana, what is the comparable subject matter area of expertise in this case that's not being hindered from being discussed? It's medical advice, a large topic. I admit it's large, but in Sorrell, the Supreme Court said the topic of marketing. Just wanted your answer to that. Okay. Could you sum up, please? Yes. For the reasons discussed, we think that in this as-applied case, what is restricted is speech. And because it is at the subject of medical advice that's restricted, strict scrutiny would apply. And the state has not met that burden yet because we're here, of course, on a motion to dismiss. So we would ask the court to reverse and remand to hold the state to its required burden. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court. We are in recess until 930 a.m. Wednesday morning. All rise.
judges: RAWLINSON, NELSON, BADE